This is an action for the redemption of real estate originally brought by Miss Bessie Wolfson and Mrs. Lena Wolfson Katz, two of the five heirs of Miss Fannie Wolfson, seeking to recover from the Succession of Alex M. Lisso, the following described property, which they alleged to have been illegally transferred to Lisso during his lifetime:
"A certain portion of ground, designated as Lot 3, Block 10, Bernstein Subdivision, in the Parish of Red River, State of Louisiana.
"The following described property, situated in the Parish of Natchitoches, State of Louisiana, being the SE 1/4 of Section 17, SE 1/4 of SW 1/4, Section 13, SW 1/4 of NE 1/4 Section 20 and fractional NE 1/4 of SW 1/4 of Section 21, Township 11, Range 8, containing 258 acres more or less.
"A certain portion of ground situated in the Parish of Caddo, State of Louisiana, designated as Lot 136, Bowman Lane Subdivision."
It is alleged that Lisso acquired the property by virtue of a certain act of sale passed before Scott E. Beer, Notary Public, on August 27, 1936, wherein Miss Fannie Wolfson purported to transfer the property to Alex M. Lisso, for a consideration of $100 cash. This attempted transfer is said to be null and void because of lesion beyond moiety.
The case was before us on a former occasion when we considered and overruled an exception of no cause of action and remanded the case for further proceedings. For a more detailed description of the facts in the case see our opinion reported in 6 So.2d 231, 232.
After the case was remanded Fannie B. Nelken joined with the plaintiffs thus leaving two other heirs of Miss Fannie Wolfson, to-wit, Marguerite Rosina Wolfson and Julian Wolfson, who accepted service as defendants, but have taken no position in the controversy and are unrepresented by counsel.
After a trial on the merits there was judgment below dismissing plaintiffs' suit and declaring the heirs of Alex M. Lisso to be the legal owners of the property involved. From that judgment the plaintiffs have appealed.
Our Civil Code provides that "if several persons have jointly sold by a single contract a joint estate, each one of them can individually exercise the right of redemption for that share only which belonged to him", Art. 2580, and that the same principle applies "when a person having sold an estate, leaves several coheirs * * *", Art. 2581, but that "in the cases provided for in the two preceding articles, the purchaser may require, if he deem it proper, that all the covendors and coheirs may be made parties to the suit, for the purpose that they may agree together on the redemption of the whole estate; and in case the covendors or coheirs should not agree, the purchaser shall be hence dismissed". Art. 2582.
When the case was last before us we recognized the fact that all of the heirs of Miss Fannie Wolfson had not indicated their agreement with plaintiffs, but we remanded the case in order to permit the coheirs of plaintiffs to make themselves parties to the plaintiffs' action if they saw fit, saying [6 So.2d 234]: "* * * it is manifest that coheirs who have brought their suit should, before their suit is dismissed under an exception, as was the case here, be afforded the opportunity of joining their coheirs as parties to the proceedings. This is all that the purchaser may, at the outset, require, and, when this requirement has been complied with, the matter resolves itself into the agreement or disagreement of the coheirs, in which latter instance the purchaser shall be dismissed."
Unfortunately, however, we added the following: "Accordingly, plaintiffs should have been permitted to cite their coheirs as defendants and thus compel such coheirs to join with plaintiffs in the prosecution of their demand, or, failing in this, be subject to have their interest in the property involved forever foreclosed by whatever judgment that may be rendered in this proceeding. See Pierce et al. v. Robertson, 190 La. 377,182 So. 544; De Hart et al. v. Continental Land Fur Company, Inc., *Page 523 
et al., 196 La. 701, 200 So. 9. Under this procedure, the failure or refusal of some of the coheirs to join with plaintiffs in the prosecution of this suit would not preclude or suppress the right of plaintiffs from asserting their cause of action against defendants."
The cases cited, Pierce et al. v. Robertson and De Hart v. Continental Land Fur Company, Inc., do not sustain the text.
In the Pierce case our Supreme Court, through Chief Justice O'Neill, said [190 La. 377, 182 So. 545]:
"In a suit for damages in which several persons have a joint interest, and in which there is only one cause of action, each one of the persons having an interest in the alleged damages has a separate and an independent right of action; but, in such a case, if it will simplify the issues and expedite the proceedings, and will not prejudice the rights of any one, the judge may, on motion of the defendant, require that all of the individuals who are entitled to share in whatever damages may be due shall be made parties to the suit brought by any one of them. See Reed v. Warren, 172 La. 1082, 136 So. 59, citing Alling v. Woodruff, 16 La.Ann. 6; Clairain v. Western Union Telegraph Co., 40 La.Ann. 178, 3 So. 625; Eichorn v. New Orleans C.R. Light 
Power Co., 112 La. 236, 36 So. 335, 104 Am.St.Rep. 437; Davis v. Arkansas Southern Railroad Company, 117 La. 320, 328, 41 So. 587; Hanton v. New Orleans C.R. Light Power Co., 124 La. 562, 50 So. 544. Reed v. Warren, supra, was cited with approval in Norton v. Crescent City Ice Mfg. Co., 178 La. 135, 150 So. 855, and in another case of the same title 178 La. 150, 150 So. 859. * * *
"Whether any given case is one in which the defendant has the right to have all of the individuals having a joint interest in any judgment that might be rendered against the defendant made parties to the suit depends upon the facts and circumstances peculiar to the case in hand. In this case we agree with the judge of the district court, that if Evelyn Pierce will not join with the plaintiffs in the prosecution of the suit, or intervene in the suit, the defendant has the right to have her cited as a defendant, so that she may have an opportunity to assert any claim that she may have, and so that, in any event, she will be bound by the judgment to be rendered in the case."
The court was considering an action brought under Article 2315
of the Civil Code where several persons had a joint interest in a suit for damages and there was only one cause of action. The court held that regardless of whether all of the interested parties joined the suit, each individual was entitled to prosecute his or her claim to judgment. However, there is no statute which prevents the prosecution of a claim under Article 2315 in the event of a disagreement among the coheirs as there is in the case of an action for redemption.
In De Hart v. Continental Land Fur Company, Inc., supra, it was held that in an action for trespass on lands and for the value of clam shells removed from the lands, where the judgment of the trial court operated to determine the interest of all the owners of the property, some of whom were not parties to the suit, the court should have reopened the case after trial and before the signature of the judgment in order to permit the absent parties to be joined in the suit. No discussion of this case is necessary. It is obviously not in point.
Our attention has been directed to the fact that Article 2582 of our Code is practically a literal translation of Article 1670 of the Code Napoleon and that there is no interpretation of the Louisiana Codal articles by our courts, but much discussion of the French article by the French commentators. For example, Troplong in Droit Civil Explique, Vol. 2, page 243, takes the position that the law in France before the adoption of the Code Napoleon did not require the covendors or coheirs to agree among themselves, saying:
"If one refused to exercise the right for his share, his share accrued to the others; (citing Tiraq S. 1, glose 6, No. 37); it was not permitted that the refusal of one should nullify the rights of the others; it was thought that the purchaser could not complain, if, for example, only one of the vendors or only one of the heirs of the vendor presented himself in response to the purchaser's demand for the entire price, as long as he was not required to revindicate a part only. Says President Favre, spokesman for this doctrine, first established on impregnable foundations by Dumoulon:
"`As often as there is some hereditary right of purchasing back an article which had been sold by a deceased, whether it is by agreement or whether because of *Page 524 
excessive lesion, one of the coheirs, even though the others are unwilling, by his own right is able to exercise that right. Especially because just as the one by whom it is sold back must not be forced to sell back a part, at least he who had not intended to sell a part; so the contumacy of coheirs perhaps unwilling to act, should not cause loss to him who in exercising his right wishes to be more diligent.'"
And in speaking of the effect of Article 1670 of the Napoleonic Code, this author says: "I readily admit that the language used is ambiguous and admits of controversy; but I can never agree that it was intended to depart from the former jurisprudence."
He then concludes that the only purpose of Article 1670 is to assure the conversion into "a single action the several actions each enjoy" and, says the author, after this is accomplished it makes no difference whether all join in the action of revindication because "upon the refusal of some of them to act the others agree to carry the whole burden of the action" and that, therefore, there will be an agreement for the redemption of the whole "the refusal of some will have been supplied by the election of the others to take their place, and there will have been established the will to retrieve the inheritance in totality in conformity with the demands of the purchaser. Thus do I interpret Article 1670".
This opinion seems also to be that of Mourlon on the Code Napoleon, Vol. 3, page 208; Duranton, Cours de Droit Francais, covering the Civil Code, Vol. 16, page 431, and Marcade', explication du Code Napoleon, Vol. 5, page 305, but, as counsel noted, two of the French Commentators, Baudry-Lacantinerie, De La Vente, p. 590, Sec. 659, and Laurent, Principes de Droit Civil Francais Vol. 24, p. 404, Sec. 413, are in disagreement with the views announced by Troplong and others. The majority of the French Commentators however, appear to agree with the position taken by Troplong, but, for our part, we humbly submit that if the French law, prior to the adoption of the French code, required no agreement among the coheirs, regardless of the demand of the purchaser as a prerequisite to an action in revindication, Article 1670 of the French Code with its mandatory provision requiring agreement among the coheirs affected a change in the situation. However that may be, Article 2582 of our Code is too plain for interpretation and we, therefore, conclude that since two of the Wolfson heirs have not agreed (the fact that they have accepted service of citation is of no importance), the purchaser must be "hence dismissed".
For the reasons assigned the judgment appealed from is affirmed and, accordingly, it is ordered that the heirs of Alex M. Lisso mentioned in the judgment be and they are held to be the legal owners of the following described property:
"A certain portion of ground designated as Lot 3, Block 10, Bernstein Subdivision, in the Parish of Red River, State of Louisiana.
"The following described property, situated in the Parish of Natchitoches, State of Louisiana, being the SE 1/4 of Section 17, SE 1/4 of SW 1/4, Section 13, SW 1/4 of NE 1/4 Section 20 and fractional NE 1/4 of SW 1/4 Section 21, Township 11, Range 8, containing 258 acres more or less.
"A certain portion of ground situated in the Parish of Caddo, State of Louisiana, designated as Lot 136, Bowman Lane Subdivision."
Judgment affirmed.